Alan Engle (SBN 224779)
alan.engle@meenlegal.com
MEADOR & ENGLE
5151 California Ave., Suite 100
Irvine, CA 92617-3059
Telephone: (310) 428-6985
Facsimile: (714) 386-5368

Attorneys for Plaintiff,
BLM Products, Ltd.

# UNITED STATES DISTRICT COURT FOR THE

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLM PRODUCTS, LTD., | Case No.: 2:17-cv-06224-RGK-PLA |
| Plaintiff, | **OPPOSITION TO MOTION TO DISMISS COUNTS 3-7** |
| v. | |
| COVVES, LLC, | |
| Defendant. | Hearing Date: October 10, 2017<br>Hearing Time: 9:00 a.m.<br>Judge: Hon. R. Gary Klausner<br>Courtroom: 850, 8th Floor |

# TABLE OF CONTENTS

**I. INTRODUCTION** ........................................................................................1

**II.  LEGAL ARGUMENT** ...............................................................................2

    A. Federal Circuit precedent requires that inequitable conduct be
       pled with particularity, not undisputed proof ...............................2

    B.  BLM's inequitable conduct claim more than satisfies the
       standard set forth by the Federal Circuit .....................................4

    C. Count 4 states a claim for relief under the Lanham Act .............9

    D. Counts 5-7 state claims for relief under state law .....................11

    E.  Even if the Court holds BLM's inequitable conduct allegations
       insufficient, BLM should be permitted to amend its Complaint.................13

**III. CONCLUSION** ........................................................................................13

# TABLE OF AUTHORITIES

**CASES**                                                                    **Page**

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007)................5

*Board of Educ. ex rel. Bd. of Trustees of Florida State Univ. v.*

    *American Bioscience, Inc.*, 333 F.3d 1330 (Fed Cir 2003) .......................3

*Branch v. Tunnell*, 14 F.3d 449 (9th Cir. 1994)............................................7

*Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*,

    326 F.3d 1226 (Fed. Cir. 2003)...................................................................4

*Burroughs Wellcome Co. v. Bar Labs., Inc.*,

    40 F.3d 1223 (Fed. Cir. 1994)....................................................................7

*Digital Control Inc. v. Charles Mach. Works*,

    437 F.3d 1309 (Fed. Cir. 2006)...................................................................3

*Exergen Corp. v. Wal-Mart Stores, Inc.*,

    575 F.3d 1312 (Fed. Cir. 2009)................................................................2, 4

*Fisher Tool Co. v. Gillet Outillage*, 530 F.3d 1063 (9th Cir. 2008) .............11

*Frank's Casing Crew & Rental Tools, Inc. v.*

    *PMR Technologies, Ltd.*, 292 F.3d 1363 (Fed. Cir. 2002) .......................3

*GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268 (Fed. Cir. 2001) .......................4

*Globetrotter Software, Inc. v. Elan Computer Group, Inc.*,

    362 F.3d 1367 (Fed. Cir. 2004)................................................................11

*Hoop v. Hoop*, 279 F.3d 1004 (Fed. Cir. 2002)............................................7

*Intellect Wireless, Inc. v. HTC Corp.*, 732 F.3d 1339 (Fed. Cir. 2013) .........3

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) .............................2

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,

    — U.S.—, 134 S.Ct. 1377 (2014)............................................................10

ii

*Molins PLC v. Textron, Inc.*, 48 F.3d 1172 (Fed. Cir. 1995)..........................3

*Safco Products Co. v. Welcom Products, Inc.*,

    799 F.Supp.2d 967 (D. Minn. 2011) ........................................8

*Semegen v. Weidner*, 780 F.2d 727 (9th Cir. 1985).......................................6

*Therasense, Inc. v. Becton, Dickinson and Co.*,

    649 F.3d 1276 (Fed. Cir. 2011)...............................................3, 8

*U.S. ex rel. Lemmon v. Envirocare of Utah, Inc.*,

    614 F.3d 1163 (10th Cir. 2010) ..............................................5

## REGULATIONS

37 C.F.R. § 1.153(a).....................................................................7

37 C.F.R. §1.56(a).......................................................................3

37 C.F.R. 1.63(a).........................................................................4

## OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(6)...............................................................2

Fed R. Civ. P. 9(b) ............................................................... passim

McCarthy on Trademarks and Unfair Competition § 27:95 (4th ed.).......... 11

Declaratory judgement plaintiff BLM Products, Ltd. ("BLM") respectfully requests that the Court deny Covves, LLC's ("Covves") Motion to Dismiss Count's 3-7 of BLM's Complaint concerning inequitable conduct and related causes of action for the reasons set forth in the Complaint and discussed below.

## I.    INTRODUCTION

BLM's Complaint for Declaratory Judgment makes a specific, concrete allegation that Mr. Krepack, the named inventor of U.S. design patent no. D787,617 ("the 'D617 patent"), is not the true or sole inventor of the design claimed therein. This allegation is not unfounded speculation but is the product of a diligent investigation by BLM and its owner, Mark Brown, who has extensive experience with the design and manufacture of recreational flotation devices sourced from China. As the Complaint notes, Mr. Brown applied this experience to track down the Chinese manufacturer of Covves' unicorn float, FTF Zhenhan Inflatable Co., Ltd. ("FTF"), whose representative confirmed to Mr. Brown that FTF was the designer of the product claimed in the 'D617 patent. (Complaint at ¶ 20).

Inventors who apply for a patent are required to execute an oath stating that they are the true inventor of the claimed invention. (Inventor Declaration, Complaint, Ex. 4). Accurate inventorship is material to patentability, and knowing or reckless false statements regarding inventorship can constitute inequitable conduct, rendering a patent unenforceable. There is no ambiguity or lack of specificity in BLM's allegation that Mr. Krepack falsely represented that he is the actual inventor of the design claimed in the 'D617 patent, and that one or more designers at FTF is either the true designer, or at least a co-designer, of the claimed design.

Covves may ultimately be able to produce evidence in support of its contention that Mr. Krepack is the true inventor, and that Mr. Brown is mistaken

with regard to role Chinese suppliers play in the design of inflatable products they manufacture, and that FTF's representative was mistaken when he informed Mr. Brown that FTF designed the product, and the images FTF sent to Mr. Brown (Design Drawings, Complaint, Ex. 3) were actually made by or derived from Mr. Krepack, but a motion to dismiss based on Rule 9(b)—simply because it is something that can be filed—is hardly the vehicle through which to decide the issue. At this stage, BLM has pled all that is required and all that can be reasonably expected and has put Covves on notice regarding the substance of its inequitable conduct claim and related causes of action.

## II.   LEGAL ARGUMENT

### A. Federal Circuit precedent requires that inequitable conduct be pled with particularity, not undisputed proof

In reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), courts view all of the pleaded facts as true and in the light most favorable to the non-moving party. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). Federal Circuit law applies to pleading inequitable conduct, which is subject to the heightened standards of Fed. R. Civ. P. 9(b). *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009). Under Rule 9(b), for allegations related to fraud, "a party must state with particularity the circumstances constituting [the] fraud," although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

USPTO regulations place a duty of candor and good faith upon patent applicants in the filing and prosecution of patent applications. "Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to

1   patentability…." 37 C.F.R. §1.56(a). "A patent may be rendered unenforceable

2   for inequitable conduct if an applicant, with intent to mislead or deceive the

3   examiner, fails to disclose material information or submits materially false

4   information to the PTO during prosecution." *Digital Control Inc. v. Charles*

5   *Mach. Works*, 437 F.3d 1309, 1313 (Fed. Cir. 2006).

6       While allegations of inequitable conduct are typically focused on

7   information allegedly withheld from the PTO, in which case the party alleging

8   inequitable conduct must demonstrate materiality of the information, the Federal

9   Circuit recognizes an exception where "the patentee has engaged in affirmative

10  acts of egregious misconduct, such as the filing of an unmistakably false

11  affidavit, the misconduct is material." *Therasense, Inc. v. Becton, Dickinson and*

12  *Co.*, 649 F.3d 1276, 1292 (Fed. Cir. 2011) (en banc); *see also Intellect Wireless,*

13  *Inc. v. HTC Corp.*, 732 F.3d 1339, 1344 (Fed. Cir. 2013) (discussing *Therasense*

14  and noting that "filing a false affidavit is exactly the sort of 'affirmative act[ ] of

15  egregious misconduct' that renders the misconduct 'material.'"). In particular,

16  "Inventorship is indeed relevant to patentability…and patents have in the past

17  been held unenforceable for failure to correctly name inventors in cases where

18  the named inventors acted in bad faith or with deceptive intent." *Board of Educ.*

19  *ex rel. Bd. of Trustees of Florida State Univ. v. American Bioscience, Inc.*, 333

20  F.3d 1330, 1344 (Fed Cir. 2003) (citing cases)*; see also Frank's Casing Crew &*

21  *Rental Tools, Inc. v. PMR Technologies, Ltd.*, 292 F.3d 1363, 1376 (Fed. Cir.

22  2002) (inequitable conduct found based on concealment of true inventorship).

23      When an affirmative misrepresentation has been made to the PTO, it must

24  be determined whether the representation was made with intent to deceive or

25  mislead. While intent to deceive the PTO may be found from direct evidence, the

26  Federal Circuit has long recognized that such direct evidence is rare. *Molins PLC*

27  *v. Textron, Inc.*, 48 F.3d 1172, 1180 (Fed. Cir. 1995). "The intent element of the

28

offense is therefore in the main proven by inferences drawn from facts, with the collection of inferences permitting a confident judgment that deceit has occurred." *GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1274 (Fed. Cir. 2001) (internal citations omitted). "[W]here withheld information is material and the patentee knew or should have know of that materiality, he or she can expect to have great difficulty in establishing subjective good faith sufficient to overcome an inference of intent to mislead." *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 326 F.3d 1226, 1239 (Fed. Cir. 2003).

### B. BLM's inequitable conduct claim more than satisfies the standard set forth by the Federal Circuit

With this background, the Federal Circuit set forth the test for pleading inequitable conduct in *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328-29 (Fed. Cir. 2009). Of course, an accused infringer need not prove the merits of its inequitable conduct claim at the pleading stage. Rather, to satisfy Fed. R. Civ. P. 9(b), "the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id*. at 1328.

The facts pled in support of Count III easily meet this threshold. BLM has alleged that Mr. Krepack [*i.e.*, who] mislead the PTO with regard to inventorship by filing a false declaration [*i.e.*, what] stating the he was "the original inventor" and/or failing to disclose a co-inventor [*i.e.*, how], at the time the declaration was filed [*i.e.*, when, where].[1] The Complaint further identifies the role of FTF and quotes specific statements from FTF's representative, Mr. Guo, indicating that

[1] Mr. Krepack's declaration is undated, but such declarations are a required part of any patent application and are typically submitted with the initial filing. 37 C.F.R. 1.63(a) ("The inventor, or each individual who is a joint inventor of a claimed invention, in an application for patent must execute an oath or declaration directed to the application….") The PTO's Patent Application Information Retrieval (PAIR) website lists the filing date of the Declaration as August 24, 2015, the same day as the application that matured into the 'D617 patent.

FTF designed the product, including the name and location of the actual designer. ("Lisa from our factory", Complaint at ¶ 21). The Complaint also includes an image of the design for the unicorn float BLM obtained from FTF, attached as Exhibit 3 thereto. Though this information may not conclusively establish inequitable conduct on the part of Mr. Krepack, that is a natural and plausible inference. *See generally Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007).

Importantly, the Complaint not only meets the Federal Circuit's *Exergen* test, the information provided is consistent with and furthers the purpose of Rule 9(b): to provide fair notice of the specifics of the allegation. As the Tenth Circuit has observed:

> Though *Twombly* and *Iqbal* clarified 9(b)'s requirements, the Rule's purpose remains unaltered. Namely, 'to afford defendant fair notice of plaintiff's claims and the factual ground upon which [they] are based....' *Id.* (*quoting Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 987 (10th Cir. 1992)); *see also* 5A Wright & Miller § 1298 (collecting cases in support of the proposition that 'the most basic consideration for a federal court in making a judgment as to the sufficiency of a pleading for purposes of Rule 9(b)…is the determination of how much detail is necessary to give adequate notice to an adverse party and enable that party to prepare a responsive pleading.").

*U.S. ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1172 (10th Cir. 2010); *see also Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985) ("Rule 9(b) ensures that allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.") BLM has not made some vague allegation of misconduct, the substance of which Covves must divine through ingenuity. Rather, its allegations identify a specific act, the filing of a false declaration of inventorship, with regard to a specific state of affairs, the respective contribution

5

of Mr. Krepack and FTF to the design claimed in the 'D617 patent.

Covves' argument that the Complaint is somehow lacking is divorced from the purpose of Rule 9. Covves argues that, "none of [the Complaint's] factual allegations *demonstrate* that Lisa invented the design covered by the 'D617 patent, or that Defendant knew that Lisa invented this design." Motion to Dismiss at 2:27-28 (emphasis added). And further, "Mr. Guo's statements do not establish that Lisa conceived of, or 'invented,' the patented design; his ambiguous statements can be interpreted as saying that Lisa simply prepared Defendant's unicorn toy for 'mass production.'" *Id.* at 3:8-10. This, of course, is not BLM's burden.

That Covves has been provided more than adequate notice is supported by its proposed Answer to Counts I and II, filed concurrently with its Motion to Dismiss. (Proposed Answer, Docket #13). Exhibit A to the Proposed Answer is a Declaration from Kevin Chang, the General Manager of FTF Zhenhan Inflatable Co., in which he claims to speak fluent English and seeks to minimize FTF's role in the design of the unicorn float. Now, Mr. Chang is likely unfamiliar with inventorship standards of US design patent law, and his declaration is clearly false when it states, "On May 27, <u>2017</u>, Covves sent Zhenhan Inflatables a confidential email containing an original design for the Unicorn Float."[2] And while a motion to dismiss is not the place to argue over the merits of competing evidence, Covves' Proposed Answer and Mr. Chang's declaration demonstrate that Covves has more than fair notice of the substance of BLM's inequitable

---

[2] The email, attached as Exhibit B to the Proposed Answer, is from May 27, <u>2015</u>, not May 27, <u>2017</u>, and comprises a single line devoid of context even though it appears to be part of a longer exchange. It also has a salutation but lacks a signature line and may have been redacted. Moreover, the subject line of the email is "Horse. Confidential Images". While it would be unusual for a native English speaker to refer to a unicorn as a "horse", it is likely common for a native Chinese speaker unfamiliar with unicorn mythology. A fair assessment of the respective contributions of Mr. Krepack and FTF in the design of the unicorn float would thus benefit from further inquiry, which Covves' motion seeks to prevent.

conduct claim. *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994) (material outside the pleadings should not be considered on a motion to dismiss).

To the extent Covves' argument gains any traction, it is by eliding the particular character of design patents and how their scope relates to issues of inventorship. In the utility patent context, one might "conceive" of a recreational flotation device in the shape of a unicorn and potentially seek a utility patent for such an "invention," assuming it is novel and non-obvious and other conditions of patentability are met. If reducing the inventive concept to practice is more or less straightforward and does not require undue experimentation, the legal standard for inventorship would be conception of the invention. *Burroughs Wellcome Co. v. Bar Labs., Inc.*, 40 F.3d 1223, 1227-1228 (Fed. Cir. 1994) ("Conception is the touchstone of inventorship, the completion of the mental part of invention.")

However, design patents are different, in many respects more similar to copyright than to utility patents. As Judge Lourie discusses in dissent in *Hoop v. Hoop*, "Design patents do not claim concepts. They claim specific designs set forth in their claims, which invariably refer to the appearance of what is illustrated in the patent's drawings. 37 C.F.R. § 1.153(a). Contrary to the conclusion of the district court, as the invention is not the concept of an eagle design, but only the *specific claimed representation* of that eagle, the 'concept' of the design is not what one must look at in determining whether the inventions are one and the same or separate." *Hoop v. Hoop*, 279 F.3d 1004, 1009 (Fed. Cir. 2002) (emphasis added). Likewise, the "invention" of the 'D617 patent is not the concept of a flotation device in the shape of a unicorn, but the specific unicorn-shaped flotation device depicted in the drawings of the patent. The key issue for determining inventorship is not who conceived of a flotation device in the shape of a unicorn, as would be the case with a utility patent, but who is responsible for

OPPOSITION TO MOTION TO DISMISS COUNTS 3-7
No. 2:17-cv-06224

the design of the specific unicorn-shaped flotation device that appears in the drawings of the 'D617 patent.

As discussed in the Complaint, based on his extensive experience sourcing inflatable flotation products from Chinese manufacturers, Mr. Brown of BLM found it implausible that Mr. Krepack, an attorney, rather than the Chinese manufacturer, created the specific design depicted in the drawings of the 'D617 patent. This informed skepticism occasioned an inquiry whereby Mr. Brown tracked down the Chinese manufacturer, whose representative informed Mr. Brown that its designer had created the design and that the product was available for export to the US.[3]

While this is not ironclad proof of inequitable conduct, or even that FTF and not Mr. Krepack, is the legal inventor of the design, it is sufficient basis to plead a claim for inequitable conduct under Rule 9(b). In fact, Mr. Krepack may have made an honest mistake when he represented to the PTO that he was the true inventor of the 'D617 patent, but he need not be afforded the benefit of the doubt at this stage of the proceedings. *See generally Safco Products Co. v. Welcom Products, Inc.*, 799 F.Supp.2d 967 (D. Minn. 2011) (offering extensive analysis and denying summary judgment of no inequitable conduct in a similar case where a Chinese manufacturer is alleged to be the actual inventor of a design patent).

Covves further argues that even if Mr. Krepack committed inequitable conduct there is no evidence Covves had knowledge of such. However, inequitable conduct renders a patent unenforceable for all purposes, regardless of who the current assignee is. *Therasense*, 649 F.3d at 1288. Additionally, Covves is a small corporation, and Mr. Krepack is a co-inventor with Covves' CEO, Mr.

---

[3] If Mr. Krepack, as opposed to FTF, is the actual inventor, presumably Covves would prohibit FTF from selling the unicorn float to other U.S. customers. Otherwise, Covves would be encouraging infringement of its own patent by permitting such sales.

Benson Su, on another design patent, D783,370, directed to a unicorn-shaped inflatable cup holder. In fact, in the May 27, 2015 email attached as Exhibit B to Covves' Proposed Answer, Mr. Su discusses the design of a unicorn float with FTF's representative (Mr. Krepack is not cc'd). Thus, whatever knowledge Mr. Krepack has regarding the true inventorship of the unicorn float design is likely shared by Mr. Su, Covves' CEO.

Finally, Covves claims that, "To satisfy Rule 9(b), Plaintiff needed to allege that Mr. Krepack: (1) knew that Lisa invented the patented design and (2) withheld this information with a specific intent to deceive the PTO." Motion to Dismiss at 7:6-8. To the contrary, it is not necessary to allege that Mr. Krepack knew the precise identity of the true inventor and withheld that information, but only that he was aware he was not the true or sole inventor when he submitted his inventorship declaration to the PTO.

For all these reasons, BLM's Complaint includes more than sufficient detail to satisfy the requirements of Rule 9(b) with respect to BLM's allegation that the 'D617 patent is unenforceable due to inequitable conduct.

### C. Count 4 states a claim for relief under the Lanham Act

Covves argues that BLM's Lanham Act claim is deficient because BLM does not "allege plausible facts demonstrating that [Covves] knew the 'D617 patent was unenforceable." Motion to Dismiss at 7:22-23. The Complaint specifically alleges that: "Covves' misrepresentations to Amazon.com were made with knowledge that the 'D617 patent is invalid and unenforceable due to willful failure to name the correct inventor(s)." Complaint at 10:11-13. That Covves possessed such knowledge is a natural and probable consequence of the factual allegations in the Complaint. And, in any event, under Fed R. Civ. P. 9(b), "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Additionally, as indicated above, Covves is a small company

whose CEO, Mr. Benson Su, worked directly with FTF (Proposed Answer, Exhibit B) and is a co-inventor with Mr. Krepack on another design patent for a floating unicorn cup holder.

Covves also argues that BLM's Lanham Act claim fails because Covves' representations to Amazon do not constitute "commercial advertising or promotion." Motion to Dismiss at 8:7-8. The U.S. Supreme Court recently addressed false advertising claims under the Lanham Act in *Lexmark Int'l, Inc. v. Static Control Components, Inc*., — U.S.—, 134 S.Ct. 1377 (2014). While *Lexmark* primarily concerns the issue of standing, the Court discusses the interests protected by the Lanham Act more broadly, including unfair competition that injures "business reputation and present and future sales." *Id.* at 1389-90. The Court ultimately concludes that, "To invoke the Lanham Act's cause of action for false advertising, a plaintiff must plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Id.* at 1395. This is precisely what BLM alleges: that Covves' made misrepresentations to Amazon that caused it to "remove BLM's listing for its Captain Floaty Giant Unicorn Pool Float, resulting in the loss of goodwill and sales and causing BLM irreparable harm." Complaint at 10:18-20.

While a false infringement complaint submitted to Amazon is not typical "commercial advertising and promotion," it is much more insidious, a means through which a party can "nuke" the entire advertising and sales channel of a competitor in a single act.

The Amazon Marketplace is both an advertising platform (*i.e.*, listing products for sale, including promotional text, photographs, and consumer reviews) and a sales channel that serves as the primary point of contact between sellers and customers. A single takedown request to Amazon can sever the link

between a seller and its customers, eliminating its ability to reach customers and sell its product. This is more effective than run of the mill false and misleading "commercial advertising and promotion" through traditional media. Further, McCarthy notes that "commercial" does not so much so much indicate dissemination to the broader public as "commercial speech," *i.e.*, statements made for primarily economic reasons. *McCarthy on Trademarks and Unfair Competition* § 27:95 (4th ed.) § 27:95 ("Thus, if the fact finder determines...that the motivation behind a challenge message was not economic, then the speech is not commercial and not within the scope of § 43(a).") Because Covves was able to eliminate BLM's own "commercial advertising and promotion" by submitting its false allegations Amazon directly, it did not have to bother reaching BLM's customers through traditional channels. In light of the purpose of the Lanham Act to provide a remedy for unfair competition, as discussed in *Lexmark*, adopting an overly literal reading of "commercial advertising and promotion" and applying that interpretation a new technological context would merely serve to undermine the goals of the statue.

### D. Counts 5-7 state claims for relief under state law

The Ninth Circuit has recognized and adopted the Federal Circuit's holding that, "where Lanham Act claims and state tort claims are based on a defendant's representation that someone infringed his patent, plaintiff must show that defendant's representation was made in bad faith." *Fisher Tool Co. v. Gillet Outillage*, 530 F.3d 1063, 1068 (9th Cir. 2008) (citing *Zenith Elecs. Corp. v. Exzec, Inc.,* 182 F.3d 1340, 1353 (Fed. Cir. 1999) (Lanham Act claims); *Hunter Douglas, Inc. v. Harmonic Design, Inc.,* 153 F.3d 1318, 1335-37 (Fed. Cir. 1998) (state tort claims)). Otherwise, state-law tort liability is preempted by the patent laws. *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 362 F.3d 1367, 1374 (Fed. Cir. 2004) ("State-law claims…survive federal preemption only to the

1    extent that those claims are based on a showing of 'bad faith' action in asserting

2    infringement.")

3          Covves argues that BLM's claims for trade liable (Count V), interference

4    with economic advantage (Count VI), and unfair business practices under CA

5    Bus. and Prof. Code §§ 17200 *et seq* (Count VII) fail to meet the Federal

6    Circuit's "bad faith" requirement. This is simply inaccurate.

7          With respect to trade libel, the Complaint alleges, "Covves' false

8    representations to Amazon.com were made willfully and with malice, knowing

9    that the 'D617 patent is invalid and/or unenforceable as a result of Covves'

10   intentional failure to name the correct inventive entity." Complaint at 11:4-6.

11         With respect to economic interference, BLM alleges, "Covves'

12   misrepresentations to Amazon.com were made in bad faith and with malice,

13   knowing that the 'D617 deceptively fails to name the correct inventive entity and

14   is therefore invalid and/or unenforceable." Complaint at 11:24-26.

15         Regarding unfair business practices, the Complaint notes, "Covves'

16   misrepresentations to Amazon.com were made in bad faith in order to injure

17   BLM or force it to license the 'D617 patent, which Covves knew to be invalid

18   and unenforceable due to willful failure to name the correct inventor or

19   inventors." Complaint at 12:19-22.

20         As discussed above, the Complaint recites facts sufficient to conclude that

21   the 'D617 patent names the incorrect inventive entity and that this failure was

22   intentional. Under Fed R. Civ. P. 9(b), "Malice, intent, knowledge, and other

23   conditions of a person's mind may be alleged generally." While BLM faces a

24   significant burden proving bad faith by clear and convincing evidence, a motion

25   to dismiss is not a proper means of deciding the issue.

26

27

28

### E. Even if the Court holds BLM's inequitable conduct allegations insufficient, BLM should be permitted to amend its Complaint

While BLM disagrees that its pleading does not satisfy the Federal Circuit's *Exergen* standard or fails to sufficiently allege bad faith with respect to other claims, BLM should be allowed to amend its pleading in the event the Court finds its pleading to be inadequate. This is consistent with the spirit of the Federal Rule of Civil Procedure 15(a)(2) that leave to amend shall be freely given when justice so requires.

### III.    CONCLUSION

BLM's claim for unenforceability of the 'D617 patent as a result of inequitable conduct arising from Mr. Krepack's knowing and willful submission of a false inventorship declaration to the PTO states relevant facts with sufficient particularity to satisfy Rule 9(b). As such, the Court should deny Covves' Motion to Dismiss BLM's inequitable conduct claim. Additionally, Counts 4-7, which turn in part on Covves' knowledge of the unenforceability of the 'D617 patent and related bad faith assertion of infringement to Amazon, satisfy the Federal Circuit's requirements with regard to tort claims based on the bad faith infringement allegations concerning a patent known to be invalid or unenforceable.


Dated: September 28, 2017               MEADOR & ENGLE


                                        /s/ Alan E. Engle
                                        Alan E. Engle
                                        Attorneys for Plaintiff
                                        BLM Products, Ltd.

OPPOSITION TO MOTION TO DISMISS COUNTS 3-7
No. 2:17-cv-06224